IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOHN BARRETT GROTE, ) | |
| ID # 33371-177, ) | |
|     Petitioner, ) | |
| vs. ) | No. 3:07-CV-0863-B (BH) |
| ) | ECF |
| DAVID BERKEBILE, Warden, ) | Referred to U.S. Magistrate Judge |
|     Respondent. ) | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

### I. BACKGROUND

Petitioner, a prisoner currently incarcerated in the Federal Correctional Institution (FCI) located in Seagoville, Texas, brings this habeas action pursuant to 28 U.S.C. § 2241 through retained counsel. David Berkebile, Warden of FCI Seagoville, is the named respondent.

Petitioner contends that the Bureau of Prisons (BOP) has categorically denied him placement on home confinement or in a halfway house[1] without an individualized review of the factors mandated by 18 U.S.C. § 3621(b). (Pet. Writ of Habeas Corpus (Pet.) at 5.) He contends that the BOP instead improperly relied on Program Statement 7320.01, which is identical to 2005 regulations previously found to be invalid, and on Program Statement 7310.04, which is also invalid. (Pet. at 5-8; Reply at 6-10.) He seeks an order granting his habeas petition and ordering respondent to

---

[1] As recognized by the parties, halfway houses were formerly titled "Community Corrections Centers" (CCCs) and are now referred to as "Residential Reentry Centers" (RRCs). Because much of the authority cited herein refers to halfway houses or CCCs, these terms will be used interchangeably with RRCs.

release him to home confinement or a halfway house. (Pet. at 2.)

Respondent initially argues that § 2241 is an inappropriate statutory basis for petitioner's challenges. (Resp. at 8-12.) Respondent further contends that petitioner is not entitled to release to home confinement. (*Id.* at 5.) With respect to petitioner's claim for release to a halfway house or RRC, respondent argues generally that petitioner has no constitutional or statutory right to such placement, and that the challenged regulations and program statements are appropriate interpretations of 18 U.S.C. §§ 3621(b) and 3624(c). (Resp. at 6-7, 12-20.)[2] Respondent concedes that petitioner exhausted his administrative remedies on July 20, 2007, and does not seek dismissal on that basis. (*See id.* at 2.)

## II. NATURE OF ACTION

Respondent first argues that § 2241 provides no jurisdictional basis for this action because petitioner is challenging where he should serve his sentence, not the fact or duration of his custody.

This Court specifically rejected respondent's position in *Mihailovich v. Berkebile*, No. 3:06-CV-1603-N, 2007 WL 942091, at *3-4 (N.D. Tex. March 28, 2007) (findings, conclusions, and recommendation accepted by District Court). Although the Fifth Circuit has not addressed this issue, *Mihailovich* noted that other circuits which had considered the issue (as well as a court in this district) have found that § 2241 provides a proper vehicle for considering where a federal sentence should be served. 2007 WL 942091, at *3 (citations omitted). More specifically, the Third Circuit found in *Woodall v. Federal Bureau of Prisons,* 432 F.3d 235, 242-44 (3d Cir. 2005), that a challenge

---

[2] Respondent also argues that the regulations do not violate petitioner's equal protection rights under the Constitution. (Resp. at 20.) No equal protection claim appears to be raised in the petition, and petitioner does not even address respondent's argument in his reply. Because petitioner has not asserted an equal protection claim, the Court need not address this argument.

2

to BOP regulations governing placement in a CCC is a proper challenge to the execution of the inmate's sentence and is therefore properly brought pursuant to § 2241. *Id.* "[A]s noted in *Woodall,* confinement in a traditional federal prison is 'qualitatively different' from community confinement, and thus justifies utilization of § 2241 for challenging BOP regulations regarding placement in a CCC". *Id.* at *4. Moreover, federal prisoners have no avenue of relief other than § 2241. *Id.* For these reasons, this Court found § 2241 to be the proper jurisdictional basis for challenging a denial of placement in a halfway house or home confinement. *Id.*

Respondent provides no reason to diverge from this Court's previous finding in *Mihailovich*.[3] Consequently, petitioner has properly invoked § 2241 as a basis for this action.

### III. STATUTORY AND ADMINISTRATIVE FRAMEWORK

Congress has enacted two statutory provisions which govern the place of incarceration for federal inmates. Section 3621(b) of Title 18 of the United States Code governs the initial designation of the place of imprisonment as well as any subsequent transfers to a different penal or correctional facility. It mandates that the BOP "shall designate the place of imprisonment" and provides it the discretion to "designate any available penal or correctional facility . . . considering" five enumerated factors: (1) the resources of the contemplated facility; (2) offense-specific information; (3) prisoner-specific information; (4) statements of the sentencing court; and (5) pertinent policy statements. *See* 18 U.S.C. § 3621(b). It further provides that the BOP "may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another." *Id.* Pre-release custody is governed by § 3624(c), which states in pertinent part:

---

[3] Notably, the respondent conceded that § 2241 provides the proper jurisdictional basis in a similar case, *Briggs v. Van Buren*, No. 4:06-CV-0800-Y (N.D. Tex.).

3

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

In 1995, the BOP established a "policy and procedures for referral and placement of pre-release inmates in Community Corrections home confinement programs." *See* BOP Program Statement 7320.01, *Home Confinement* (Sept. 6, 1995) (found on-line at http://bop.gov/DataSource/execute/dsPolicyLoc). According to Program Statement 7320.01:

> The Bureau does **not** have statutory authority to designate a home confinement program for an inmate at the beginning of his or her sentence. This is supported in Title 18, U.S.C., Section 3621, which requires that the Bureau designate any available **penal or correctional** facility as the place of a prisoner's imprisonment.

*Id.* ¶ 1. "All inmates referred to community corrections are eligible to be considered for home confinement placement." *Id.* ¶ 6. In addition, although the BOP provides CCC "services for persons as a condition of probation, parole, or supervised release, only in the most extraordinary circumstances will the Bureau assume responsibility for such persons on home confinement." *Id.* The Program Statement also provides for placement on home confinement following CCC placement and directly from an institution in appropriate circumstances. *Id.* ¶¶ 11-12.

In December 1998, the BOP established "guidelines . . . regarding the effective use of Community Corrections Centers (CCCs)." *See* BOP Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedure* (Dec. 16, 1998). The Program Statement provided that "the Bureau is not restricted by § 3624(c) in designating a CCC for an inmate and may place an inmate in a CCC for more than the 'last ten per centum of the term,' or more than six months, if appropriate," but § 3624(c) "does restrict the Bureau in placing inmates on home confinement to

4

the last six months or 10% of the sentence, whichever is less." *Id.* ¶ 5.  It further stated that CCCs (now RRCs) have two components:  (1) a Community Corrections Component and (2) a Prerelease Component, and it set forth guidelines for developing a release plan for each inmate, "including a decision as to CCC referral, is normally established at a team meeting no later than 11 to 13 months before an inmate's projected release date." *Id.* ¶¶ 7-8.

In December 2002, the BOP changed its practice and began restricting CCC or RRC placements to the final ten percent of an inmate's term of imprisonment, not to exceed six months.  *See generally Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 240 (3d Cir. 2005).  Because "[t]he December 2002 Policy spawned numerous legal challenges from inmates who previously would have been eligible for CCC placement at any time during their incarceration, including the last six months", the BOP proposed new regulations in August 2004 to govern CCC placement decisions and, after receiving public comment, the BOP published the new regulations on January 10, 2005.  *Pimentel v. Gonzales*, 367 F. Supp. 2d 365, 367-69 (E.D.N.Y. 2005) (collecting cases); *accord Woodall*, 432 F.3d at 240 (noting that the proposed regulations are found at 69 Fed. Reg. 51,213 (Aug. 18, 2004)).

The new regulations became effective on February 14, 2005, and are codified at 28 C.F.R. §§ 570.20 and 570.21.  Section 570.20 addresses the purpose of the regulations:

> (a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement.  The Bureau designates inmates to community confinement only as part of the pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.
>
> (b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

5

Section 570.21 addresses the timing of CCC designations:

> (a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.
>
> (b) We may exceed these time frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program (18 U.S.C. 3621(e)(2)(A), or shock incarceration program (18 U.S.C. 4046(c)).

Petitioner contends in his petition that the BOP improperly relied on Program Statement 7320.01 to deny him placement in home confinement or in an RRC without considering the five factors mandated by § 3621(b). (Pet. at 6-8.) In his reply, he contends that the BOP improperly relied on Program Statement 7310.04, which he also claims is invalid, to deny him RRC placement. (Reply at 10.) Although petitioner's pleadings do not evidence a clear and direct challenge to the validity of the 2005 regulations, his arguments are based on the premise that the regulations are invalid. Because respondent directly challenges this underlying premise, (*see* Resp. at 12-17), the Court first addresses the validity of the regulations before addressing the validity of the program statements challenged by petitioner.

## IV. 2005 REGULATIONS

Neither the Fifth Circuit nor the United States Supreme Court have addressed the validity of the 2005 regulations challenged in this action. However, the validity of these regulations, as they apply to RRC placement or home confinement placement was directly considered by this Court in *Mihailovich v. Berkebile*, No. 3:06-CV-1603-N, 2007 WL 942091 (N.D. Tex. March 28, 2007).

**A. RRC Placement**

In *Mihailovich*, this Court followed the majority opinions in *Wedelstedt v. Wiley*, 477 F.3d 1160

(10th Cir. 2007); *Levine v. Apker*, 455 F.3d 71 (2d Cir. 2006); *Fults v. Sanders*, 442 F.3d 1088 (8th Cir. 2006); and *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005), to invalidate the 2005 regulations as they relate to RRC placement because they preclude consideration of all factors enumerated in 18 U.S.C. § 3621(b) and "do not permit the BOP to consider CCC placement prior to the last ten percent of [the inmate's] sentence". *See* 2007 WL 942091, at *9-10. The Court recognized *Woodall* as the general approach taken by the courts of appeal; *Woodall* specifically rejected the same arguments asserted by the respondent in *Mihailovich*, including arguments based upon *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)[4] and *Lopez v. Davis*, 531 U.S. 230 (2001)[5]. *See id.* at *9. More recently, *Briggs v. Van Buren*, No. 4:06-CV-0800-Y, 2007 WL 3019238 (N.D. Tex. Oct. 16, 2007), likewise rejected respondent's reliance on *Chevron* and *Lopez*, and followed the four circuit decisions and *Mihailovich* to invalidate the 2005 regulations as they relate to RRC placement. *Id.* at *2-5.

Respondent argues that the regulations challenged in this action are appropriate interpre-

---

[4] In *Chevron*, the Supreme Court set out a two-step process when reviewing an agency's interpretation of a statute that it administers. *See* 467 U.S. at 842-43. More specifically,
> [w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842-43 (footnotes omitted).

[5] In *Lopez*, the Supreme Court upheld a BOP regulation (28 C.F.R. § 550.58) that limited discretion granted to the BOP under 18 U.S.C. § 3621(e)(2)(B) to reduce a prisoner's sentence for successfully completing a treatment program if the prisoner's current offense is a felony involving a firearm. 531 U.S. at 238-44. In doing so, the Supreme Court stated: "'[E]ven if a statutory scheme requires individualized determinations,' which this scheme does not, 'the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority.'" *Id.* at 243-44 (quoting *American Hosp. Ass'n v. NLRB*, 499 U.S. 606, 612 (1991) and citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)).

tations of 18 U.S.C. §§ 3621(b) and 3624(c), and are thus entitled to deference under *Chevron* and *Lopez*. (*See* Resp. at 12-17.) As found in *Mihailovich* and *Briggs*, deference under *Chevron* is simply not warranted, however. First, because the regulations elevate time served to a determinative factor rather than considering time served in conjunction with the five listed factors, the regulations appear contrary to the clear congressional intent that the BOP consider the five factors listed in § 3621(b). As aptly stated by the Third Circuit, "we are faced with a statute providing that the BOP must consider several factors in CCC placement, and a regulation providing that the agency may not consider those factors in full. The conflict between the regulations and the statute seems unavoidable." *Woodall*, 432 F.3d at 249. Additionally, because the statute does not permit a non-listed factor to effectively trump consideration of the five listed ones as the 2005 regulations seem to dictate, the regulations appear manifestly contrary to § 3621(b) and thus constitute an impermissible construction of the statute. Consequently, the regulations are entitled to no *Chevron* deference even if the Court finds § 3621 ambiguous. Furthermore, *Lopez* does not dictate a different outcome because "individual determinations are required by § 3621(b)" and the "sentencing recommendations and other individual factors . . . are not generally applicable" so as to provide a basis for the regulations. *Woodall*, 432 F.3d at 247; *accord Briggs*, 2007 WL 3019238, at *5 (concluding that "because § 3621(b) sets out specific individualized factors, it is different from the issue resolved by the Supreme Court in reviewing the terms of § 3621(e)(2)(B), such that *Lopez* does not control this Court's review of 28 C.F.R. §§ 570.20 and 21"); *Mihailovich*, 2007 WL 942091, at *9 (finding *Woodall* persuasive and rejecting respondent's argument based upon *Lopez*).

Respondent also argues that although the circuit courts "have rejected the reasoning supporting the questioned regulations and policies," the interpretation of those courts regarding 18

8

U.S.C. § 3621(b) renders § 3624(c) meaningless. (Resp. at 12.) In addition, he argues that § 3621(b) authorizes the BOP to consider the listed factors only when it has first elected to consider whether to transfer an inmate. (*See id.* at 13.) The *Woodall* decision also cogently addresses these arguments. With respect to the first argument, the Third Circuit succinctly states that "§ 3624 does not determine when the BOP should *consider* CCC placement, but when it must *provide* it." See 432 F.3d at 250. Interpreting § 3621(b) to require consideration of the five factors listed therein does not render § 3624(c) meaningless in any respect. *Woodall* rejected the latter argument because (1) the argument ignores the fact that the BOP considered the question of halfway house placement when it promulgated the 2005 regulations and (2) the statute clearly exhibits an intent that the five factors "be considered in making determinations regarding where to initially place an inmate, as well as whether *or not* to transfer him." *Id.* at 249-50.

Respondent further argues that the 2005 regulations do not conflict with congressional intent as shown by a Senate Judiciary Committee Report, which states that "[t]he Committee, by listing the facts for the Bureau to consider in determining the appropriateness or suitability of any available, facility, does not intend to restrict or limit the Bureau in the exercise of its existing discretion." (Resp. at 16 (citing S. Rep. No. 98-225 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3325).) It contends that this legislative history shows that the BOP's treatment of the § 3621(b) factors as discretionary is consistent with congressional intent in enacting the statute. (*Id.*) *Woodall* again provides a strong answer to this argument. First, the language quoted by respondent does not recognize the specific language quoted in *Woodall* from the same Senate report which reflects that the BOP is "specifically required" to consider the § 3621(b) factors and "*[a]fter considering these factors*, the Bureau of Prisons *may* designate the place of imprisonment in an appropriate type of facility, or may

9

transfer the offender to another appropriate facility". *Woodall*, 432 F.3d at 245-46 (quoting with added emphasis S. Rep. No. 98-225 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3324-25). Second, *Woodall* addressed a similar argument that the § 3621(b) factors are discretionary because the BOP may "consider *additional* factors in making CCC determinations." *Id.* at 247. In rejecting such argument, it stated:

> We find this argument unpersuasive. The question whether the BOP may consider additional factors is separate and unrelated to the question whether it can ignore altogether the very factors delineated by Congress in the governing statute itself. Neither the BOP nor the government has cited a single indication that Congress felt the BOP could categorically refuse to consider in full one of the factors explicitly enumerated in § 3621.

*Id.*

For all of these reasons, the Court rejects respondent's various arguments for departing from the approach adopted in *Mihailovich* with respect to RRC placement. Under *Mihailovich* and *Briggs*, the 2005 regulations are invalid because they do not permit the BOP to consider the § 3621(b) factors or RRC placement prior to the last ten percent of an inmate's sentence.

**B. <u>Home Confinement</u>**

With regard to application of the 2005 regulations to home confinement placement, *Mihailovich* initially found that placement in a "penal or correctional facility", as that phrase is used in 18 U.S.C. § 3621(b), does not include home confinement placement. *See* 2007 WL 942091 at *7 (citing *Crowley v. Fed. Bureau of Prisons*, 312 F. Supp. 2d 453, 461 (S.D.N.Y. 2004) (noting that BOP Program Statement 7310.01 excludes "home confinement" from the definition of "penal or correctional facility"); *United States v. Morales-Morales*, 985 F. Supp. 229, 231 (D.P.R. 1997)

(same)).[6] Further, § 3621(b) provides no statutory authority for the BOP to designate a prisoner's home as a place of imprisonment. *Id.* at *10. In addition, "[u]ntil petitioner is within the last ten percent of his sentence, not to exceed six months, § 3624(c) provides no basis for placement in home confinement." *Id.* When a petitioner has not reached the last ten percent of his sentence, "the BOP properly denie[s] him release to home confinement without consideration of the factors in § 3621(b) regardless of the February 2005 regulations." *Id.*

Petitioner recognizes that *Mihailovich* forecloses his claims concerning release to home confinement but urges the Court to re-evaluate *Mihailovich* with respect to those claims.[7] (*See* Reply at 2 n.1.) He submits that in *Mihailovich*, the Court did not consider *Moresco v. United States*, No. 92-1108, 1992 U.S. App. LEXIS 32819 (10th Cir. Dec. 10, 1992) and *Stonecipher v. Caraway*, 05-2161 (JRT/JSM), 2005 U.S. Dist. LEXIS 42098 (D. Minn. Dec. 23, 2005) (report and recommendation) *adopted by* 2006 U.S. Dist. LEXIS 36177 (D. Minn. Jan. 20, 2006). (*Id.*) Relying on those two cases, he contends that placement in a "penal or correctional facility" within the meaning of § 3621(b) includes home confinement placement. (Pet. at 5-7; Reply at 2 n.1.)

In *Moresco*, the Tenth Circuit recognized that the term "imprisonment" includes home confinement. *See* 1992 U.S. App. LEXIS 32819, at *4. The case made no statement as to the meaning of "penal or correctional facility" as used in 18 U.S.C. § 3621(b). *Stonecipher* likewise does not address the meaning of that phrase. *See* 2005 U.S. Dist. LEXIS 42098. Although home confinement

---

[6] *Crowley* and *Morales-Morales* reference Program Statement 7310.01. However, it is Program Statement 7320.01 which relates to home confinement and distinguishes home confinement from a penal or correctional facility.

[7] Because the validity of the Program Statements was not before the Court in *Mihailovich*, petitioner's request for the Court to re-evaluate its holding that home confinement falls outside the boundaries of a "penal or correctional facility" appears to be an implicit challenge to the 2005 regulations that were at issue in *Mihailovich*.

is a form of imprisonment, § 3621(b) only permits the BOP to (1) designate an available penal or correctional facility for service of a federal sentence or (2) transfer a prisoner "from one penal or correctional facility to another" after considering the five factors set out in that statute. Neither *Moresco* nor *Stonecipher* provides sufficient reason to depart from *Mihailovich* on this issue.

As found in *Mihailovich*, the 2005 regulations do not alter the statutory scheme as it relates to placement in home confinement. In that context, the regulations are entirely consistent with §§ 3621(b) and 3624(c).

## V. PROGRAM STATEMENTS

Petitioner specifically asks the Court to invalidate Program Statements 7320.01 and 7310.04 for the same reasons as the 2005 regulations. (Pet. at 6-8, Reply at 6-10.)

Program Statement 7320.01 relates solely to home confinement. As discussed in the prior section, the 2005 regulations are entirely consistent with 18 U.S.C. §§ 3621(b) and 3624(c) in the home confinement context. Program Statement 7320.01 is likewise entirely consistent with those statutes in that context. Its stated purpose is to establish procedures related to home confinement placement for pre-release inmates. *See* BOP Program Statement 7320.01, *Home Confinement* (Sept. 6, 1995) ¶ 1. It establishes such procedures consistently with the statutes and appropriately recognizes that home confinement does not equate to a "penal or correctional facility" as that phrase is used in § 3621(b). *See id.* That the 2005 regulations are invalid as they relate to RRC placement provides no basis to invalidate a program statement which relates solely to home confinement. Petitioner provides no adequate reason to invalidate that program statement.

As to Program Statement 7310.04, which concerns RRC placement, neither the Fifth Circuit nor a court in this circuit has addressed its validity. However, the issue has been directly addressed

in the United States District Court for the Eastern District of California. *See Leon-Rivera v. Smith*, No. 1:07-CV-00823-OWW, 2007 WL 2900222, at *3-4 (E.D. Cal. Oct. 4, 2007) (recommendation of magistrate judge not yet accepted or adopted by the District Court); *Ghag v. Smith*, No. 1:07-CV-00561-AWI, 2007 WL 2385070, at *3-4 (E.D. Cal. Aug. 17, 2007) (recommendation of magistrate judge), *adopted by* unpub. order (E.D. Cal. Oct. 3, 2007).

In *Ghag*, the court found that Program Statement 7310.04 is not "derivative of the discredited regulations." 2007 WL 2385070, at *3. The Program Statement, furthermore, does not "improperly limit the discretion of the BOP to make an RRC placement in any individual case or otherwise 'circumvent' the BOP's other regulations." *Leon-Rivera*, 2007 WL 2900222, at *3. In fact, Paragraph 8 of the Program Statement specifically requires prison personnel to commence "release planning at an inmate's first team meeting" and provides three guidelines with respect to an inmate's release plan:

> a. Planning early in an inmate's period of confinement is necessary to ensure release preparation needs are identified and appropriate release preparation programs are recommended.
>
> b. Preliminary decisions regarding eligibility for CC Programs are to be made well in advance of the last year of confinement.
>
> c. A final and specific release preparation plan, including a decision as to CCC referral, is normally established at a team meeting no later than 11 to 13 months before an inmate's projected release date.

As succinctly and accurately stated in both *Leon-Rivera* and *Ghag*:

> Nothing in the Program Statement *prevents* the BOP, in the exercise of its statutory discretion, from making an earlier determination, although the Court is not aware of any statute or regulation that requires such expedited action by the BOP. In other words, the Program Statement simply insures that inmates will receive an RRC assessment sufficiently in advance of their release date to permit them to make appropriate plans prior to their transfer. Because the Program Statement does not

13

limit or otherwise intrude on the BOP's exercise of discretion in making its RRC assessment, the Program Statement . . . is not in any way analogous to the 2002 and 2005 regulations that many courts . . . have found to be an illegal limitation on the discretion vested in the BOP by § 3621(b).

*Id.*; *Ghag*, 2007 WL 2385070, at *3.

*Leon-Rivera* and *Ghag* appropriately consider the interplay between Program Statement 7310.04 and the discredited regulations. The Court finds the reasoning of these cases persuasive, and based thereon, finds that the invalidity of the 2005 regulations does not invalidate Program Statement 7310.04.

For all of these reasons, the Court finds no basis to invalidate Program Statement 7320.01 or 7310.04.

## VI. REMEDY

Because respondent has failed to give him an individualized review as required by 18 U.S.C. § 3621(b), petitioner asks the Court to order respondent to release him to a halfway house.[8]

Petitioner misconstrues *Mihailovich v. Berkebile*, No. 3:06-CV-1603-N, 2007 WL 942091 (N.D. Tex. March 28, 2007) as supporting a claim for immediate release to a halfway house. As recognized in *Mihailovich*, "that the BOP may assign a prisoner to a CCC does not mean that it must." *See* 2007 WL 942091, at *10 (quoting *Woodall*, 432 F.3d at 251). Relying on *Woodall*, *Mihailovich* found that "the appropriate remedy" was "an order requiring the BOP to consider in good faith whether the petitioner should be transferred to a RRC considering the five factors set out in § 3621(b) without regard for §§ 570.20 and 570.21." *Id.* Nowhere did the Court suggest that

---

[8] Petitioner initially asked the Court to order respondent to immediately release him to home confinement, or alternatively to a halfway house. However, the requested release to home confinement was contingent upon success on his home confinement claims. Because those claims fail to entitle petitioner to habeas relief, the only remaining requested remedy is petitioner's request for immediate release to a halfway house.

14

immediate release to an RRC was a proper remedy for petitioner's claim regarding RRC placement. Moreover, at the time of the recommendation the petitioner in that case was within approximately three months of fully completing his federal sentence and within six weeks of a scheduled pre-release preparation date. *See id.* at *1, 9-11. These facts, which are not present here, warranted a means to enforce timely compliance with the order to the BOP to consider the § 3621(b) factors in good faith.

In conclusion, as set out in *Mihailovich*, the appropriate remedy for denial of a § 3621(b) individualized review based on the 2005 regulations is an order that requires the BOP to consider in good faith whether petitioner should be transferred to an RRC based on the five factors set out in § 3621(b) without regard to those regulations. To the extent petitioner seeks an order that immediately releases him to a halfway house, the instant petition should be denied.

## VII. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT** petitioner's federal petition for writ of habeas corpus to the extent the BOP relied on 28 C.F.R. §§ 570.20 and 570.21 to deny him an individualized review of the five factors set out in 18 U.S.C. § 3621(b). The Court should order respondent through the BOP to consider in good faith whether petitioner should be transferred to an RRC considering the five factors set out in § 3621(b) as they relate individually to petitioner without regard to the invalidated regulations, and to complete such consideration within a specific time frame after the acceptance of this recommendation. The Court should otherwise **DENY** the instant federal petition for writ of habeas corpus.

**SIGNED** this 26th day of October, 2007.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE